UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KEVIN JASON CHANAGUANO CAIZA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:25-cv-00500-JAW |
| ) | |
| RODNEY S. SCOTT, et al., ) | |
| ) | |
| Respondents. ) | |

**ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER**

The court issues a temporary restraining order, restraining respondents from removing the petitioner from the United States and ordering the respondents to allow for communication between the petitioner and his counsel, both pending further order of this court. The court issues this temporary restraining order to maintain the status quo, prevent the respondents from removing the noncitizen from the United States to allow his petition to receive proper due process, and to allow his attorneys to communicate with him. Although the petitioner has requested that the court order the respondents to return the petitioner to the state of Maine from the state of New Jersey where he was recently transported, the court goes no farther. The respondents promised to respond to the motion for temporary restraining order by noon tomorrow and the court issues this order without prejudice to the arguments either for the petitioner or for the respondents. Once the respondents have filed their response, the court will hold a conference of counsel to discuss the next step.

I.  **BACKGROUND**[1]

On October 2, 2025, Kevin Jason Chanaguano Caiza filed an amended petition for a writ of habeas corpus under 28 U.S.C. § 2241 and further sought emergency injunctive relief from Rodney S. Scott, in his official capacity as the Commissioner of U.S. Customs and Border Protection (CBP), Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement (ICE), and Kristi Noem, in her official capacity as U.S. Secretary of Homeland Security (jointly, the Respondents).  *Emergency Verified Am. Pet for Writ of Habeas Corpus and Req. for Emergency Injunctive Relief Pursuant to Fed R. Civ. P. 65(b)* (ECF No. 7) (*First Am. Pet.*).  Mr. Chanaguano Caiza is an indigenous citizen of Ecuador who entered the United States on December 13, 2022.  *Id.* ¶ 4.  He resides in Maine, has no criminal convictions, and his daughter is a United States Citizen.  *Id.*  Mr. Chanaguano Caiza alleges CBP, a sub-agency within the Department of Homeland Security (DHS), detained him on September 28, 2025, initially at Fort Fairfield Station in Fort Fairfield, Maine.  *Id.* ¶ 1.

On September 30, 2025, Mr. Chanaguano Caiza filed his first petition for a writ of habeas corpus under 28 U.S.C. § 2241.  *Verified Pet. for Writ of Habeas Corpus Pursuant to Fed. R. Civ. P. 65(b)* (ECF No. 1) (*Pet.*).  Mr. Chanaguano Caiza alleges on information and belief that "DHS has detained Petitioner pursuant to the

---

[1]  For the purposes of the requested TRO, the Court reviews the relevant facts as pleaded in Mr. Chanaguano Caiza's verified petitions, which the Court takes as true at this stage of the proceeding.  *See Emergency Verified Am. Pet for Writ of Habeas Corpus and Req. for Emergency Injunctive Relief Pursuant to Fed R. Civ. P. 65(b)* (ECF No. 7) (*First Am. Pet.*); *Verified Pet. for Writ of Habeas Corpus Pursuant to Fed. R. Civ. P. 65(b)* (ECF No. 1) (*Pet.*).

Expedited Removal statue, 8 U.S.C. § 1225" and that detention under § 1225 is unlawful because Mr. Chanaguano Caiza "has been present in the United States for longer than two years." *Id.* ¶ 6. He also asserts that "detention under 8 U.S.C. § 1225 will deprive Petitioner of the right to a bond hearing in which the government bears the burden of proof." *Id.* ¶ 9. Further, he "maintains that 8 U.S.C. § 1226, not 8 U.S.C. § 1225, is the statute that governs his detention because he was released on his own recognizance into the United States pursuant to 8 U.S.C. § 1226, and has resided in the United States for nearly three years prior to his recent arrest by the Respondents." *Id.* ¶ 10.[2]

On September 30, 2025, pursuant to 2025, 28 U.S.C. § 2243, this Court issued an order to show cause instructing Respondents to explain why this petition for a writ of habeas corpus should not be granted. *O.S.C.* (ECF No. 5).

Then, on October 1, 2025, DHS transferred Mr. Chanaguano Caiza to Delaney Hall Detention Facility in Newark, New Jersey, where he alleges he has been denied access to counsel in violation of the Due Process Clause of the Fifth Amendment. *First Am. Pet.* ¶¶ 2-3. Mr. Chanaguano Caiza seeks, inter alia, a writ of habeas corpus and a temporary restraining order (TRO) ordering his immediate transfer back to the District of Maine and access to counsel. *Id.* ¶ 14.

## II.    LEGAL STANDARD

---

[2]    Mr. Chanaguano Caiza does not provide the Court with the date of prior encounters with DHS but asserts "DHS released the Petitioner into the United States after his arrival to this country; therefore, the Petitioner "effected an entry into the United States." *Id.* ¶ 7 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)); *First Am. Pet.* ¶ 9 (same).

The standard for issuing a TRO is the same as for a preliminary injunction and is provided by traditional equity doctrines. *Aftermarket Auto Parts All., Inc. v. Bumper2Bumper, Inc.*, Civil No. 1:12-cv-00258-NT, 2012 U.S. Dist. LEXIS 143685, *3 (D. Me. Oct. 4, 2012); *accord* 11A WRIGHT, MILLER & KANE § 2942, at 37; *Alcom, LLC v. Temple*, No. 1:20-cv-00152-JAW, 2020 U.S. Dist. LEXIS 79863, at *15 (D. Me. May 6, 2020) (collecting cases).

"A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011); *accord Mass. Coal. of Citizens with Disabilities v. Civ. Def. Agency & Off. of Emergency Preparedness*, 649 F.2d 71, 76 n.7 (1st Cir. 1981) ("The authority of the District Court Judge to issue a preliminary injunction should be sparingly exercised")). "In order for a court to grant this type of relief, a plaintiff 'must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that the injunction is in the public interest." *Peoples Fed. Sav. Bank*, 672 F.3d at 8-9 (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)). "The party seeking the preliminary injunction bears the burden of demonstrating that these four factors weigh in its favor." *Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006). "[T]rial courts have wide discretion in making judgments regarding the appropriateness of" preliminary injunctive relief. *Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 14 (1st Cir. 2010).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

#### 1. Jurisdiction

As an initial matter, the Court concludes that it retains jurisdiction over Mr. Chanaguano Caiza's habeas petition. "District courts are limited to granting habeas relief 'within their respective jurisdictions,'" *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) (quoting 28 U.S.C. § 2241(a)), and "with respect to habeas petitions 'designed to relieve an individual from oppressive confinement,' the traditional rule has always been that the Great Writ is 'issuable only in the district of confinement.'" *Id.* (quoting *Carbo v. United States*, 364 U.S. 611, 618 (1961)). Furthermore, "[u]nder habeas law, jurisdiction in a particular district is established when a petitioner is physically present in the district at the same moment a petition is filed there on his behalf." *Mahmoud Khalil v. Joyce*, No. 25-cv-01963 (MEF)(MAH), 2025 U.S. Dist. LEXIS 63573, at *7 (D.N.J. April 1, 2025); *accord Rumsfeld*, 542 U.S. at 435 (2004); *United States v. Hayman*, 342 U.S. 205, 213 (1952); *Ahrens v. Clark*, 335 U.S. 188, 190 (1948).

Here, when Mr. Chanaguano Caiza filed his habeas petition, he was in custody in the District of Maine. The Court accordingly concludes that it retains jurisdiction over this matter.

#### 2. The Merits of Mr. Chanaguano Caiza's Habeas Petition

In the United States Court of Appeals for the First Circuit, a likelihood of success on the merits is both the "sine qua non" and the "most important part of the preliminary injunction assessment"; the First Circuit has explained that "if the

moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 7-10 (1st Cir. 2012) (quoting *Jean v. Mass. State Police*, 492 F.3d 24, 27 (1st Cir. 2008); *New Comm Wireless Servs. Inc. v. SPrintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002)). To carry his burden on this factor, a plaintiff "must establish a 'strong likelihood' that he will ultimately prevail." *Sindicato Puertorriqueño de Trabajadores*, 699 F.3d. at 10 (quoting *Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010)). Mr. Chanaguano Caiza brings his habeas petition for violation of his due process rights under the Fifth Amendment of the United States Constitution; the Court thus considers Mr. Chanaguano Caiza's likelihood of success on these claims.

The Immigration and Nationality Act (INA) provides, inter alia, a statutory scheme for removal proceedings. *See* 8 U.S.C. §§ 1225, 1226. In broad terms, there are two pathways for removal of aliens. *Id.* Under 8 U.S.C. § 1226, individuals are served a Notice to Appear (NTA) and placed in removal proceedings in the Immigration Court where those individuals receive procedural protections furnished by applicable statues. 8 U.S.C. § 1226. Under this pathway, individuals without a criminal record or terrorism involvement are entitled to a bond hearing which may result in release for the pendency of the removal proceedings. *Id.* Further, the decision of the Immigration Court is subject to appellate review by the BIA and subsequent petition for review to U.S. Court of Appeals. *See* 8 U.S.C. §§ 1252(b)(9), 1252(a)(5). In short, removal proceedings under 8 U.S.C. § 1226 provide a measure

of due process. By contrast, under 8 U.S.C. § 1225(b), an expedited removal process permits immigration enforcement officials, rather than Immigration Judges, to issue removal decisions that are not subject to appeal to the BIA or U.S. Court of Appeals. Expedited removal is limited to noncitizens who, inter alia, have not demonstrated "that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . .." U.S.C. § 1225(b)(1)(A)(iii)(II).

Furthermore, recent opinions in this District and elsewhere have rejected an interpretation of § 1225(b)'s provision for mandatory detention of noncitizens "seeking admission" that applies to noncitizens—like Mr. Chanaguano Caiza—who have been residing in the United States for more than two years in light of the relevant statutory text and overall statutory scheme. *Chang Barrios v. Shepley*, No. 1:25-cv-00406, 2025 U.S. Dist. LEXIS 152874 (D. Me. Aug. 8, 2025); *Rodrigues De Oliveira v. Joyce*, No. 2:25-cv-00291, 2025 U.S. Dist. LEXIS 125776 (D. Me. July 2, 2025); *Chafla v. Scott*, No. 2:25-cv-00437, 2025 U.S. Dist. LEXIS 184909 (D. Me. Sept. 21, 2025). Nearly all district courts agree. *See, e.g.*, *Aceros v. Kaiser*, No. 25-cv-06924, 2025 U.S. Dist. LEXIS 179594 (N.D. Cal. Sept. 12, 2025); *Sampiao v. Hyde*, No. 1:25-cv-11981, 2025 U.S. Dist. LEXIS 175513 (D. Mass. Sept. 9, 2025); *Jimenez v. FCI Berlin*, No. 25-cv-00326, 2025 U.S. Dist. LEXIS 176165 (D.N.H. Sept. 8, 2025); *Francisco T. v. Bondi*, No. 25-CV-03219, 2025 U.S. Dist. LEXIS 179562 (D. Minn. Aug. 29, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 U.S. Dist. LEXIS 169423 (E.D. Mich. Aug. 29, 2025); *Diaz v. Mattivelo*, No. 1:25-cv-12226, 2025 U.S.

Dist. LEXIS 166667 (D. Mass. Aug. 27, 2025); *Romero v. Hyde*, No. CV 25-11631, 2025 U.S. Dist. LEXIS 160622 (D. Mass. Aug. 19, 2025); *Maldonado v. Olson*, No. 25-cv-3142, 2025 U.S. Dist. LEXIS 158321 (D. Minn. Aug. 15, 2025); *Rosado v. Figueroa*, No. CV-25-02157, 2025 U.S. Dist. LEXIS 156344 (D. Ariz. Aug. 11, 2025), R&R adopted sub nom.; *Rocha Rosado v. Figueroa*, No. CV-25-02157, 2025 U.S. Dist. LEXIS 156336 (D. Ariz. Aug. 13, 2025); *Benitez v. Francis*, No. 25 CIV. 5937, 2025 U.S. Dist. LEXIS 153952 (S.D.N.Y. Aug. 13, 2025); *Martinez v. Hyde*, No. CV 25-11613, 2025 U.S. Dist. LEXIS 141724 (D. Mass. July 24, 2025); *Gomes v. Hyde*, No. 1:25-cv-11571, 2025 Dist. LEXIS 128085 (D. Mass. July 7, 2025); *Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).

Based on the evidence in the record, the Court concludes that Mr. Chanaguano Caiza has evidenced a likelihood of success on his claim, as the Respondents have not produced evidence that Mr. Chanaguano Caiza has arrived in the United States within two years, subjecting him to Expedited Removal.

### B. Likelihood of Irreparable Harm

Mr. Chanaguano Caiza argues that it is important for the Court to preserve its jurisdiction over the pending habeas petition because "Petitioner's counsel has not been able to make contact with Petitioner or personnel at the Delaney Hall Detention Center" and also because "Petitioner's transportation outside the First Circuit will deprive Petitioner of the right to a bond hearing in which the government bears the burden of proof." *First Am. Pet.* ¶¶ 14-15. The Court concludes that Mr. Chanaguano Caiza has demonstrated likelihood of irreparable harm absent temporary injunctive

8

relief, but only insofar as it relates to his transfer outside of the United States. The Court will reconsider the likelihood of irreparable harm after Respondents' response, and, if necessary, grant a further TRO. For the time being, absent a TRO preventing his transfer outside the country, Mr. Chanaguano Caiza faces irreparable harm because an enforcement official could send him anywhere in the world as soon as tomorrow, without due process.

### C. The Balance of the Equities and the Public Interest[3]

Finally, upon consideration of the last two factors, the balance of the equities weighs in favor of granting the Mr. Chanaguano Caiza's TRO, and a TRO would serve the public interest. To obtain preliminary injunctive relief, a petitioner must also show "the balance of equities tips in [their] favor." *Winter*, 555 U.S. at 20. This involves weighing "the balance of relevant hardships as between the parties." *Vaqueria Tres Monjitas, Inc. v. Fabre Laboy*, 587 F.3d 464, 482 (1st Cir. 2009). Furthermore, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

Here, as discussed above, the hardship to Mr. Chanaguano Caiza absent a TRO is obvious. If his removal does not comply with due process, he risks removal to an

---

[3]     The Supreme Court has instructed that the last two factors in the TRO analysis "merge when the Government is the party opposing the [TRO]"; the Court follows this instruction and reviews the balance of the equities and the public interest in tandem. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

uncertain destination, on an uncertain timeline, through unspecified means. The relative hardship to the Respondents, in contrast, is slight. Furthermore, in cases implicating removal, "there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009); *accord D.V.D. v. United States Dep't of Homeland Sec.*, Civil Action No. 25-10676-BEM, 2025 U.S. Dist. LEXIS 74197, at *54 (D. Mass. April 18, 2025) (same).

There is a tension between the "public interest in prompt execution of removal orders," *Nken*, 556 U.S. at 436, and the petitioner's allegation that he may be subject to an illegal and unconstitutional removal. As the Supreme Court has written, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Alabama Ass'n of Realtors v. HHS*, 594 U.S. 758, 766 (2021); *see also NFIB v. Dep't of Labor*, 595 U.S. 109, 120-21 (2022) (staying an illegal vaccine mandate even though the Government said the mandate would save more than 6,500 lives); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952) (affirming district court's preliminary injunction of an illegal executive order even though a wartime president said his order was "necessary to avert a national catastrophe"). Further, "[t]he fact that [Mr. Chanaguano Caiza] has shown a likelihood of success on the merits strongly suggests that a TRO would serve the public interest." *New York v. Trump*, No. 25-cv-39, 2025 U.S. Dist. LEXIS 17593, at *17 (D.R.I. Jan. 31, 2025); *accord League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("[T]here is a substantial public interest in having governmental agencies abide by the federal laws

10

that govern their existence and operations") (internal quotation marks omitted). The Court does not assume that the Respondents would violate the legal or constitutional rights of Mr. Chanaguano Caiza; however, for the moment and without having heard the Respondents' position, these final factors in the analysis lean in the Petitioner's favor.

### IV. LIMITATIONS OF RELIEF

"[An] injunction should issue only where [it is] essential in order effectually to protect . . . rights against injuries otherwise irremediable." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)). Here, the "irremediable" injury would be deportation without due process, notice, and a meaningful opportunity to be heard.

Accordingly, the Court circumscribes its remedy, at this time, to prevent the DHS from removing Mr. Chanaguano Caiza from the United States before a district court has had the opportunity to issue a ruling on his habeas petition. *See, e.g.*, *Lynch v. Dukakis*, 719 F.2d 504, 514 (1st Cir. 1983) ("The 'principles of equity jurisprudence' suggest that 'the scope of injunctive relief is dictated by the extent of the violation established . . . [and] the relief afforded [may not be] more burdensome than necessary to redress the complaining parties'") (citing *Califano v. Yamasaki*, 442 U.S. 682, 702, (1979); *Milliken v. Bradley*, 433 U.S. 267, 280-81 (1977)).

### V. BOND REQUIREMENT

Pursuant to Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives

security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). The First Circuit has explained "[t]he purpose of such a bond is to ensure that the enjoined party may readily be compensated for the costs incurred as a result of the injunction should it later be determined that it was wrongfully enjoined." *Axia NetMedia Corp. v. Mass. Tech. Park Corp.*, 889 F.3d 1, 11 (1st Cir. 2018); *accord Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982) (Stevens, J., concurring) ("The bond, in effect, is the moving party's warranty that the law will uphold the issuance of the injunction").

The First Circuit has previously indicated "there is ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond," *Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc.*, 925 F.2d 6, 9 (1st Cir. 1991) (collecting cases), but the district courts in this circuit have generally required a bond to be posted. *See WEX Inc. v. HP Inc.*, No. 2:24-cv-00121-JAW, 2024 U.S. Dist. LEXIS 119715, at *99-100 (D. Me. July 9, 2024) (collecting cases). District courts are vested with "wide discretion" to set the amount of the bond. *Axia NetMedia*, 889 F.3d at 11; *accord Totem Forest Prods. v. T & D Timber Prods.*, No. 2:17-cv-00070-JDL, 2017 U.S. Dist. LEXIS 26062, at *5 (D. Me. Feb. 24, 2017) ("The Court has discretion to determine the amount of the security"). Here, to comply with the mandatory nature of the bond requirement, the Court requires the Mr. Chanaguano Caiza to

post a bond of $100 within 48 hours of the issuance of this Order pursuant to Federal Rule of Civil Procedure 65(c).

## VI. CONCLUSION

The Court ORDERS that the Respondents in this matter are hereby ENJOINED from removing Kevin Jason Chanaguano Caiza from the United States pending further order of this Court and that Respondents grant Kevin Jason Chanaguano Caiza access to counsel.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of October, 2025