UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KEVIN JASON CHANAGUANO CAIZA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )     1:25-cv-00500-JAW |
| | ) |
| RODNEY S. SCOTT, et al., | ) |
| | ) |
| Respondents. | ) |

**ORDER ON MOTION FOR PRELIMINARY INJUNCTION**

Finding that the petitioner has not demonstrated likelihood of success on the merits, the court denies a preliminary injunction prohibiting the respondents from transferring the petitioner from his current place of detention. The court further dismisses the underlying petition for writ of habeas corpus, without prejudice.

## I.    PROCEDURAL HISOTRY

Kevin Jason Chanaguano Caiza seeks a preliminary injunction prohibiting the Respondents[1] from transferring him from his current place of detention.[2]    *Pet'r's*

---

[1]    Rodney S. Scott, in his official capacity as the Commissioner of U.S. Customs and Border Protection (CBP), Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement (ICE), and Kristi Noem, in her official capacity as U.S. Secretary of Homeland Security (jointly, the Respondents).

[2]    Technically, Mr. Chanaguano Caiza seeks an injunction prohibiting his transfer from Delaney Hall Detention Center in Newark, New Jersey. *Prelim. Inj. Mot.* at 1. However, as will be seen, on October 9, 2025, Mr. Chanaguano Caiza was transferred from Delaney Hall to the Folkston D-Ray ICE Processing Center in Folkston, Georgia, where he remains today. The Court has therefore considered his requested relief to be to prohibit the Respondents from transferring him from his current place of detention.

*Emergency Mot. and Mem. of Law Requesting Prelim. Inj. Enjoining Transfer* (ECF No. 18) at 1 (*Prelim. Inj. Mot.*).

On September 30, 2025, Mr. Chanaguano Caiza filed his first petition for a writ of habeas corpus under 28 U.S.C. § 2241 while detained by Customs and Border Protection (CBP) in Fort Fairfield Station, 200 Limestone Road, Fort Fairfield, Maine. *Verified Pet. for Writ of Habeas Corpus Pursuant to Fed. R. Civ. P. 65(b)* ¶¶ 1-2. (ECF No. 1) (*Pet.*). Mr. Chanaguano Caiza alleges on information and belief that the Department of Homeland Security (DHS) "has detained Petitioner pursuant to the Expedited Removal statue, 8 U.S.C. § 1225" and that detention under § 1225 is unlawful because Mr. Chanaguano Caiza "has been present in the United States for longer than two years." *Id.* ¶ 6. He also asserts that "detention under 8 U.S.C. § 1225 will deprive Petitioner of the right to a bond hearing in which the government bears the burden of proof." *Id.* ¶ 9. Further, he "maintains that 8 U.S.C. § 1226, not 8 U.S.C. § 1225, is the statute that governs his detention because he was released on his own recognizance into the United States pursuant to 8 U.S.C. § 1226, and has resided in the United States for nearly three years prior to his recent arrest by the Respondents." *Id.* ¶ 10.

On September 30, 2025, pursuant to 28 U.S.C. § 2243, this Court issued an order to show cause instructing the Respondents to explain why the petition for a writ of habeas corpus should not be granted. *O.S.C.* (ECF No. 5).

On October 1, 2025, DHS transferred Mr. Chanaguano Caiza from Fort Fairfield, Maine to Delaney Hall Detention Facility, Newark, New Jersey. *Emergency*

*Verified Am. Pet for Writ of Habeas Corpus and Req. for Emergency Injunctive Relief Pursuant to Fed R. Civ. P. 65(b)* (ECF No. 7) ¶ 2 (*First Am. Pet.*).  Then, on October 2, 2025, Mr. Chanaguano Caiza filed an amended petition for a writ of habeas corpus under 28 U.S.C. § 2241 and further sought emergency injunctive relief from the Respondents.  *First Am. Pet.*  Later that day, this Court issued a temporary restraining order to maintain the status quo: it prohibited the Respondents from removing Mr. Chanaguano Caiza from the United States to allow his petition to receive proper due process and to allow his attorneys to communicate with him. *Order on Mot. for TRO* (ECF No. 10) (*TRO*).  The Court denied Mr. Chanaguano Caiza's request that the Court order the Respondents to return him to the state of Maine from the state of New Jersey.  *Id.*

On October 3, 2025, the Respondents submitted their response to the order to show cause.  *Return and Resp. to O.S.C.* (ECF No. 11) (*Opp'n to O.S.C.*).  On October 6, 2025, the Court held a telephonic conference of counsel.  *Min. Entry* (ECF No. 16). On October 8, 2025, Mr. Chanaguano Caiza submitted his reply to the Respondents' response to the order to show cause, *Pet'r's Reply to Resp't's Return and Resp. to O.S.C.* (ECF No. 17) (*Reply to Opp'n to O.S.C.*), as well as an emergency motion for a preliminary injunction seeking to enjoin the Respondents from transferring him. *Prelim. Inj. Mot.* at 6.

On October 9, 2025, the Respondents filed their sur-reply to the order to show cause, *Sur-Reply to Pet'r's Reply to Return and Resp. to O.S.C.* (ECF No. 20) (*Sur-Reply to O.S.C.*), as well as their opposition to the emergency motion for preliminary

3

injunction. *Resp. in Opp'n to Emergency Mot. for Prelim. Inj. Enjoining Transfer* (ECF No. 21) (*Opp'n to Prelim. Inj. Mot.*).

More recently, on October 16, 2025, the Court extended the October 2, 2025 Temporary Restraining Order until October 30, 2025 to maintain the status quo and give the Court more time to consider the underlying merits. *Order to Extend TRO* (ECF No. 24). In this order, the Court addresses Mr. Chanaguano Caiza's emergency motion for preliminary injunction.

## II.    THE FACTUAL RECORD[3]

Mr. Chanaguano Caiza is an indigenous citizen of Ecuador who resides in Maine and has no criminal convictions; his daughter is less than one year old and is a United States Citizen. *First Am. Pet.* ¶ 4. On December 13, 2022, United States Border Patrol (USBP) arrested Mr. Chanaguano Caiza at or near San Luis, Arizona, and the relevant records indicate his status was marked as "TRAVEL/SEEKING" when apprehended. *Opp'n to O.S.C.* Attach 1, at 1 (*2022 Record of Deportable Alien*).

Three days later, on December 16, 2022, Mr. Chanaguano Caiza was paroled "due to detention capacity constraints at the San Clemente Border Station," and provided forms I-385, the Alien Booking Record, and I-94, the Arrival Record. *Id.* at 2. Mr. Chanaguano Caiza's form I-395 confirmed that he was paroled "due to

---

[3]      For the purposes of the requested preliminary injunction, the Court reviews the relevant facts as pleaded in Mr. Chanaguano Caiza's verified petitions, *see Pet.*, *First Am. Pet.*, Respondents' response and sur-reply to the order to show cause, *see Opp'n to O.S.C.*, *Sur-Reply to O.S.C.*, Mr. Chanaguano Caiza' reply to Respondents' opposition, *Reply to Opp'n to O.S.C.*, the parties' briefings relevant to this motion, *Prelim. Inj. Mot.*, *Opp'n to Prelim. Inj. Mot.*, and additional attachments submitted by Mr. Chanaguano Caiza. *First Additional Attach's* at 1-3 (ECF No. 25), *Second Additional Attach.* at 1 (ECF No. 26).

detention capacity" following his apprehension on December 13, 2022. *Opp'n to O.S.C.* Attach 2, at 1 (*2022 Alien Booking Record*). His form I-95 Arrival Record also confirmed that he was paroled until February 10, 2022 for the "purpose" of "212(d)(5)." *Opp'n to O.S.C.* Attach 3, at 1 (*2022 Arrival Record*).[4] As a condition of his parole, Petitioner was required to "report to the [ICE] office near [his] final destination within 60 days or face removal from the United States." *2022 Alien Booking Record* at 2.

Three years later, on September 28, 2025, Mr. Chanaguano Caiza was apprehended by border patrol personnel while driving to a jobsite in Augusta, Maine. *Opp'n to O.S.C.* Attach 4, at 3-4 (*2025 Record of Deportable Alien*). He was then served with a Notice to Appear (NTA), charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen "present in the United States who has not been admitted or paroled" and ordering him to appear in Chelmsford, Massachusetts before an immigration judge on October 9, 2025. *Opp'n to O.S.C.* Attach 6, at 1, 4 (*NTA*).

Mr. Chanaguano Caiza filed his initial habeas petition on September 30, 2025, alleging that CBP had detained him on September 28, 2025, initially at Fort Fairfield Station in Fort Fairfield, Maine. *Pet.*; *First Am. Pet.* ¶ 1. On October 1, 2025, he was transported from Maine to ICE custody at the Delaney Hall Detention Center in Newark New Jersey, where he remained as of October 3, 2025. *Opp'n to O.S.C.* at 1.

---

[4]    Section 212(d)(5)(A) of the INA is codified as 8 U.S.C. § 1182(d)(5)(A). The statute "grants the Secretary discretion to parole non-citizens into the United States." *Doe v. Noem*, No. 25-1384, 2025 U.S. App. LEXIS 23647, at *6 (1st Cir. Sept. 12, 2025).

Mr. Chanaguano Caiza alleges that an officer of Delaney Hall Detention Center told him that he would be transferred to an undisclosed location on October 9, 2025. *Prelim. Inj. Mot.* at 2. But the Respondents stated there are no further plans for transfer. *See Opp'n to Prelim. Inj. Mot.* at 1 ("Respondents are not going to transfer Petitioner 'to an undisclosed location,' . . . a fact that will be corroborated each day his detention in Newark continues").

On October 16, 2025, Mr. Chanaguano Caiza filed additional attachments showing an Immigration Judge's denial of his bond request and a screenshot of Immigration Court portal showing the case was transferred to Immigration Court in Atlanta, Georgia. *First Additional Attach's* at 1-3 (ECF No. 25). On October 24, 2025, Mr. Chanaguano Caiza filed another attachment indicating that he was detained by ICE and transferred on October 9, 2025 to the Folkston D-Ray ICE Processing Center in Folkston, Georgia. *Second Additional Attach.* at 1 (ECF No. 26).

## III.    LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011). To determine whether to issue a preliminary injunction, a court must analyze four factors:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

6

*Esso Standard Oil Co. (P.R.) v. Monroig-Zayas*, 445 F.3d 13, 17-18 (1st Cir. 2006) (alteration in original) (quoting *Bl(a)ck Tea Soc'y v. City of Boston*, 378 F.3d 8, 11 (1st Cir. 2004)). "The party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor." *Id.* at 18 (citing *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003)). Ultimately, "trial courts have wide discretion in making judgments regarding the appropriateness of such relief." *Francisco Sánchez v. Esso Standard Oil Co.*, 572 F.3d 1, 14 (1st Cir. 2009).

"The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002); *see also Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 7 (1st Cir. 2012) (confirming that this factor is "the most important part of the preliminary injunction assessment" (quoting *Jean v. Mass. State Police*, 492 F.3d 24, 27 (1st Cir. 2008)).

Irreparable harm is "an injury that cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 76 (1st Cir. 2005). For the Court to grant the motion for preliminary injunction, Mr. Chanaguano Caiza must "demonstrate that irreparable injury is *likely* in the absence of an injunction," not merely that it is a possibility. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original); *see also Canadian Nat'l Ry. Co. v. Montreal, Me. & Atl. Ry., Inc.*, 786 F. Supp. 2d 398, 432 (D.

Me. 2011) ("[P]roof of a mere possibility of injury is insufficient to justify an injunction"). Courts "measure irreparable harm on 'a sliding scale, working in conjunction with a moving party's likelihood of success on the merits.'" *Braintree Lab'ys, Inc. v. Citigroup Glob. Mkts. Inc.*, 622 F.3d 36, 42-43 (1st Cir. 2010) (quoting *Vaqueriá Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009)). Thus, "[t]he strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown;" however, "at least some positive showing of irreparable harm must still be made." *Id.* at 43 (internal quotation omitted) (alteration in original); *see also Gately v. Commonwealth of Mass.*, 2 F.3d 1221, 1232 (1st Cir. 1993) ("[A] federal court cannot dispense with the irreparable harm requirement in affording injunctive relief").

The First Circuit has termed the third factor the "balance of relevant impositions," assessing "the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues." *Monroig-Zayas*, 445 F.3d at 18 (quoting *Bl(a)ck Tea Soc'y*, 378 F.3d at 11) (internal quotations omitted). The Court must weigh the balance of equities to determine whether the injury to the moving party in the absence of a preliminary injunction outweighs any harm to the nonmoving party if granted.

The final factor is the public interest. This factor requires the Court to "inquire whether there are public interests beyond the private interests of the litigants that would be affected by the issuance or denial of injunctive relief." *Everett J. Prescott, Inc. v. Ross*, 383 F. Supp. 2d 180, 193 (D. Me. 2005). "In exercising their sound

discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.

## IV.    DISCUSSION

### A.    Likelihood of Success on the Merits

#### 1.    Jurisdiction

As an initial matter, the Court concludes that it retains jurisdiction over Mr. Chanaguano Caiza's habeas petition. "District courts are limited to granting habeas relief 'within their respective jurisdictions,'" *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) (quoting 28 U.S.C. § 2241(a)), and "with respect to habeas petitions 'designed to relieve an individual from oppressive confinement,' the traditional rule has always been that the Great Writ is 'issuable only in the district of confinement.'" *Id.* (quoting *Carbo v. United States*, 364 U.S. 611, 618 (1961)). Furthermore, "[u]nder habeas law, jurisdiction in a particular district is established when a petitioner is physically present in the district at the same moment a petition is filed there on his behalf." *Mahmoud Khalil v. Joyce*, No. 25-cv-01963 (MEF)(MAH), 2025 U.S. Dist. LEXIS 63573, at *7 (D.N.J. April 1, 2025); *accord Rumsfeld*, 542 U.S. at 435 (2004); *United States v. Hayman*, 342 U.S. 205, 213 (1952); *Ahrens v. Clark*, 335 U.S. 188, 190 (1948). Here, when Mr. Chanaguano Caiza filed his habeas petition, he was in custody in the District of Maine, and the Court concludes that it retains jurisdiction over this matter.

### 2.    The Merits of Kevin Jason Chanaguano Caiza's Habeas Petition

In the First Circuit, a likelihood of success on the merits is both the "sine qua non" and the "most important part of the preliminary injunction assessment"; the First Circuit has explained that "if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 7-10 (1st Cir. 2012) (quoting *Jean v. Mass. State Police*, 492 F.3d 24, 27 (1st Cir. 2008); *New Comm Wireless Servs. Inc. v. SPrintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002)).  To carry his burden on this factor, the moving party "must establish a 'strong likelihood' that he will ultimately prevail." *Sindicato Puertorriqueño de Trabajadores*, 699 F.3d. at 10 (quoting *Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010)).  Mr. Chanaguano Caiza brings his habeas petition for violation of his due process rights under the Fifth Amendment of the United States Constitution.

### a.    Statutory Framework

The Immigration and Nationality Act (INA) governs the detention and removal of noncitizens.  Distinguishing between those seeking entry into the United States and those already present in the United States, it provides a mandatory and discretionary detention under §§ 1225 and 1226, respectively.  *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (plurality opinion); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law").

Section 1225 applies to "applicants for admission," defined as a noncitizen "present in the United States who has not been admitted" or "who arrives in the United States." 8 U.S.C. § 1225(a)(1). Applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287.

Section 1225(b)(1) subjects arriving noncitizens and "certain other" noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" to expedited removal proceedings. *Jennings*, 583 U.S. at 287; 8 U.S.C. § 1225(b)(1)(A)(i), (iii). Noncitizens subject to expedited removal can avoid removal with successful asylum claims. However, if a noncitizen detained under § 1225 does not indicate an intent to apply for asylum, express a fear of persecution, or is "found not to have such a fear," he is detained until removed. *Id.* §§ 1225(b)(1)(A)(i), (B)(iii)(IV).

Under § 1225(b)(2) "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for the duration of removal proceedings. 8 U.S.C. § 1225(b)(2)(A). Thus, § 1225(b)(2) creates a mandatory detention scheme for those individuals within its definition.

However, under a limited exception to mandatory detention the Attorney General may "for urgent humanitarian reasons or significant public benefit" temporarily parole aliens detained under §§ 1225(b)(1) and (b)(2). 8 U.S.C. § 1182(d)(5)(A). Parole under § 1182(d)(5)(A) "employs a legal fiction whereby non-

11

citizens are physically permitted to enter the country but are nonetheless 'treated,' for legal purposes, 'as if stopped at the border.'" *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 U.S. Dist. LEXIS 141724, at *9 (D. Mass. July 24, 2025) (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020)).

By contrast, § 1226 governs the "usual removal process" with an evidentiary hearing before an immigration judge. *Id.* at 108. Section 1226(a) gives immigration authorities power to issue an administrative warrant and either continue detention for removal proceedings or release the noncitizen on "bond . . . or conditional parole." 8 U.S.C. § 1226(a)(1)-(2). Section 1226(a) thus "establishes a discretionary detention framework for noncitizens." *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 U.S. Dist. LEXIS 128085, at *4-5 (D. Mass. July 7, 2025).[5]

Once arrested under § 1226(a), immigration authorities make an individualized initial custody determination after which they have discretion to release a noncitizen if the noncitizen can "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8) (2025). If the immigration officer opts for continued detention, the noncitizen may seek review of that decision at a bond hearing before an immigration judge. 8 C.F.R. § 236.1(d)(1) (2025). At a bond hearing, the government bears the burden of proving "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or "by

---

[5]    Section 1226's discretionary detention regime has one exception: immigration authorities "shall take into custody" any noncitizen involved in certain enumerated criminal activities. 8 U.S.C. § 1226(c)(1). None of those criminal activities is at issue here.

preponderance of the evidence that [the noncitizen] poses a flight risk". *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). An immigration judge's decision to continue detaining a noncitizen may be appealed to the Board of Immigration Appeals (BIA). 8 C.F.R. § 236.1(d)(3).

### b.    Applicable Statutory Basis for Detention

The Respondents submitted proof that Mr. Chanaguano Caiza was paroled until February 10, 2022 pursuant to § 1182(d)(5)(A). *See Opp'n to O.S.C.* at 4; *I-94 Arrival Record* at 1.[6] The Court agrees that under the relevant implementing regulations, Mr. Chanaguano Caiza's parole automatically terminated on February 10, 2022. 8 C.F.R. § 212.5(e)(1)(ii) ("Parole shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized, and in [] case [of expired parole] the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required"). After automatic termination, the noncitizen "shall be restored to the status that he or she had at the time of parole." *Id.* at 212.5(e)(2)(i).

The parties disagree on Mr. Chanaguano Caiza's status upon expiration of parole.

The Respondents argue Mr. Chanaguano Caiza is subject to § 1225(b)(2). They claim that "[e]xamination under § 1225(b)(2)(a) simply involves determining that 'an alien seeking admission is not clearly and beyond a doubt entitled to be admitted,' or

---

[6]    Under "purpose" the arrival record reads "212(d)(5). *Id.* INA § 212(d)(5) is codified at 8 U.S.C. § 1182(d)(5)(A).

that a basis for admission does exist.  Here, the documents incontrovertibly show that immigration authorities made that inadmissibility determination by paroling Petitioner, rather than admitting him."  *Opp'n to Prelim. Inj. Mot.* at 4.  The Respondents also claim § 1225(b)(2) governs removal and detention because Mr. Chanaguano Caiza was paroled in December of 2022 pursuant to § 1182(d)(5)(A), which they argue is the only means for paroling noncitizens detained under § 1225.  *Resp. to Prelim. Inj.* at 4.  Mr. Chanaguano Caiza maintains that "documents proffered by the Government do not indicate that the Petitioner was initially detained under 8 U.S.C. § 1225."  *Prelim. Inj. Mot.* at 3.

The Court agrees with Mr. Chanaguano Caiza that the documentation is not as explicit as the Respondents suggest, but nevertheless considers the Respondents to have the better position.  The documentation the Respondents submitted indicates Mr. Chanaguano Caiza's status was marked as "TRAVEL/SEEKING" when apprehended.  *2022 Record of Deportable Alien* at 1.  It does not explicitly note detention pursuant to § 1225(b)(2).  Neither does the form I-395, *2022 Alien Booking Record*, nor form I-95 Arrival Record.  *2022 Arrival Record*.  While the Respondents documentation does not clearly indicate Mr. Chanaguano Caiza was initially detained § 1225(b)(2), the circumstances of his initial encounters with immigration authorities do.  Indeed, USBP arrested Mr. Chanaguano Caiza at or near San Luis, Arizona, which lies on the United States-Mexico border.

Similarly, Mr. Chanaguano Caiza's parole under § 1182 does not by itself demonstrate that he was initially detained under § 1225(b)(2), but the Respondents

nevertheless have the stronger argument.  As discussed, the Attorney General may "for urgent humanitarian reasons or significant public benefit" temporarily parole noncitizens subject to mandatory detention under §§ 1225(b)(1) and 1225(b)(2).  8 U.S.C. § 1182(d)(5)(A).  "That express exception to detention implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be released." *Jennings*, 583 U.S. at 300 (emphasis original).  In short, those detained under § 1225(b) can only be paroled pursuant to § 1182(d)(5)(A).  However, it does not necessarily follow that all those paroled under § 1182(d)(5)(A) were detained under § 1225 in the first instance.  For example, some beneficiaries of humanitarian parole under § 1182(d)(5)(A) are asylum applicants who obtain advance parole to travel into and out of the United States.  8 C.F.R. § 212.5(f).  Nothing in the record suggests Mr. Chanaguano Caiza applied for or received humanitarian parole.  *See Tokhi v. Noem*, No. CV 24-8952 (RK), 2025 U.S. Dist. LEXIS 171789, at *2-4 (D.N.J. Sept. 3, 2025) (outlining the process of applying for parole).  To the contrary, as described earlier, Mr. Chanaguano Caiza's form I-395 confirmed that he was paroled "due to detention capacity" following his apprehension on December 13, 2022.  *2022 Alien Booking Record* at 1.

Nor is there any indication the Mr. Chanaguano Caiza was paroled pursuant to § 1226(a).  The release of a noncitizen on bond or conditional parole under § 1226 (a)(2) is distinct from the parole authority for "urgent humanitarian reasons" or "significant public benefit" under § 1182(d)(5)(A).  *See Jennings*, 583 U.S. at 297 (2018) ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond

hearings"). Under § 1226(a)(2), a noncitizen is entitled to a bond hearing and eligible for release pending the removal proceeding. Under § 1182(d)(5)(A), a noncitizen can "physically enter the country, subject to a reservation of rights by the Government that it may continue to treat the non-citizen 'as if stopped at the border.'" *Martinez*, 2025 U.S. Dist. LEXIS 141724, at *8 (citing *Thuraissigiam*, 591 U.S. 103, 139 (2020)). The Court concludes that Mr. Chanaguano Caiza was initially detained pursuant to § 1225(b)(2) and therefore, upon expiration of his parole, his status is restored to detention under that same statute.

Even if the Court was unable to determine whether Mr. Chanaguano Caiza was initially detained pursuant to § 1225(b)(2), to conclude now that he is subject to discretionary detention under § 1226(a) would reward noncitizens paroled under § 1182(d)(5)(A) for their failure or refusal to report to ICE as directed. The record appears to establish that in the years and months since February 10, 2022, Mr. Chanaguano Caiza has been continuously living in the United States. *See First Am. Pet.* at 2, 8. Had he never encountered USBP at or near San Luis, Arizona in 2022, he may have been able to argue that as a noncitizen present in the United States for more than two years, he is not "seeking admission" and thus cannot be detained subject to mandatory detention under § 1225(b)(2). However, the Respondents' documentation proves that Mr. Chanaguano Caiza encountered immigration authorities, was granted § 1182(d)(5)(A) parole, and instructed to "report to the [ICE] office near [his] final destination within 60 days or face removal from the United States." *2022 Alien Booking Record* at 2. Just because he did not report to ICE at

16

the sixty day mark, does not mean Mr. Chanaguano Caiza can now benefit from the increased protections the INA affords noncitizens apprehended under § 1226(a).

c.    **Fifth Amendment Due Process Claims**

A court may grant a writ of habeas corpus to a petitioner who demonstrates his detention violates the Constitution or laws of the United States.   28 U.S.C. § 2241(c)(3).   The petitioner must prove illegal detention by a preponderance of the evidence.   *De Oliveira v. Joyce*, No. 2:25-cv-00291-LEW, 2025 U.S. Dist. LEXIS 125776, at *8 (D. Me. July 2, 2025) (citing *Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting authority)).   Mr. Chanaguano Caiza brings his habeas petition for violation of his due process rights under the Fifth Amendment, and the Court thus considers the merits of this claim.

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."   U.S. CONST. am. V.   While "[i]t is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders," *Zadvydas*, 533 U.S. at 693, the Fifth Amendment's due process protections among them, *United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990), "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citing, e.g., *Plyler v. Doe*, 457 U.S. 202, 210 (1982)).

17

Mr. Chanaguano Caiza has not been denied due process.  He argues, inter alia, that the Respondents violated his procedural due process rights because they did not determine that the purpose of his parole pursuant to § 1182(d)(5)(A) had been served. *Reply to Opp'n to O.S.C.* at 15.  This argument fails.  While it is true that the relevant implementing regulations require the government to make an individualized determination that the purpose of the parole has been served, that requirement is not applicable where, as here, expiration of term of the parole was given at the outset.  8 C.F.R. § 212.5(e)(1)(ii) ("Parole shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized").

Further, because Mr. Chanaguano Caiza is detained subject to § 1225(b)(2), he is not entitled to a bond hearing where the government would bear the burden of proving he is a flight risk or community risk. *Hernandez-Lara*, 10 F.4th at 41 (noting that at a bond hearing, the government bears the burden of proving "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or "by preponderance of the evidence that [the noncitizen] poses a flight risk").  In fact, he did appear for a bond hearing, but the Immigration Judge denied bond pursuant to binding BIA precedent. *First Additional Attach's* at 1.

The fact of detention alone is insufficient for a viable due process claim. *Thuraissigiam*, 591 U.S. at 138 (citation modified) (recognizing, as to nonresidents who have never "been admitted into the country pursuant to law, the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law").

For the foregoing reasons, Mr. Chanaguano Caiza is properly detained under § 1225(b)(2) and not likely to succeed on his underlying habeas claim.

## B.    Likelihood of Irreparable Harm

The party seeking preliminary injunctive relief must demonstrate "that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). "[I]rreparable harm can consist of 'a substantial injury that is not accurately measurable or adequately compensable by money damages.'" *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 13 (1st Cir. 2000) (*Ross-Simons II*) (quoting *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996) (*Ross-Simons I*)). "[D]istrict courts have broad discretion to evaluate the irreparability of alleged harm." *Ross-Simons II*, 217 F.3d at 13 (quoting *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir. 1989)).

Mr. Chanaguano Caiza argues "the irreparable injury upon the Petitioner's transfer—which would constitute the second transfer during the pendency of these proceedings—will be an inability to communicate with counsel." *Prelim. Inj. Mot.* at 5. Mr. Chanaguano Caiza alleges that he has already had difficulty contacting his counsel during his detention at Delaney Hall and that further transfer would "exacerbate the present lack of access to communication between the Petitioner and counsel." *Id.* On October 9, 2025, the "Respondents" confirmed that they "are not going to transfer him to an undisclosed location." *Opp'n to Prelim. Inj. Mot.* at 3.[7]

---

[7]    Later in the same October 9, 2025 memorandum, the Respondents' attorney wrote that Mr. Chanaguano Caiza "cannot meet the most important factor of the preliminary injunction analysis, that of a likelihood of success on the merits" because "he fails on multiple fronts." *Opp'n to Prelim. Inj. Mot.* at 3. "*First*, Petitioner seeks relief that is prospective, premature, or moot. His claimed harm is

However, Mr. Chanaguano Caiza's attorneys later notified the Court that Mr. Chanaguano Caiza was moved on October 9, 2025 to the Folkston D-Ray ICE Processing Center in Folkston, Georgia. *Second Additional Attach.* at 1.

The Respondents did not explain their change in position, namely that Mr. Chanaguano Caiza would not be transferred. At the same time, Mr. Chanaguano Caiza has not alleged any access to counsel hurdles posed by the latest detention transfer. The Court recognizes that "[i]n order to 'actually seek habeas relief,' a detainee must have sufficient time and information to reasonably be able to contact counsel, file a petition, and pursue appropriate relief." *A. A. R. P. v. Trump*, 605 U.S. 91, 95 (2025) (quoting *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025)). As far as this Court knows, Mr. Chanaguano Caiza has been able to confer with his counsel to file and pursue his underlying habeas claim.

At present there is no risk of harm to Mr. Chanaguano Caiza that would be remedied by an order of this Court prohibiting his transfer outside of New Jersey. In fact, Mr. Chanaguano Caiza is now in Georgia and there is no indication that transfer has thwarted his access to counsel. The likelihood of irreparable harm weighs against granting Mr. Chanaguano Caiza's preliminary injunction motion.

---

anticipated, rather than actual, because Respondents are not going to transfer him." *Id.* (emphasis in original). Later that same day, it appears—contrary to the Respondents' representation—the Respondents did transfer Mr. Cahanguano Caiza from New Jersey to Georgia. *Second Additional Attach.* at 1. The Court assumes that the Respondents' attorney meant to represent that the Respondents would not transfer him to an undisclosed location, instead of that it would not transfer him at all. Alternatively, ICE ERO may have decided to transfer Mr. Chanaguano Caiza to Georgia later on October 9, 2025 without informing the Respondents' attorney.

### C.    The Balance of the Equities and the Public Interest[8]

Finally, upon consideration of the last two factors, the balance of the equities weighs against granting the Mr. Chanaguano Caiza's preliminary injunction, and a preliminary injunction is not now necessary to serve the public interest.  To obtain preliminary injunctive relief, a petitioner must also show "the balance of equities tips in [their] favor."  *Winter*, 555 U.S. at 20.  This involves weighing "the balance of relevant hardships as between the parties."  *Vaqueria Tres Monjitas, Inc. v. Fabre Laboy*, 587 F.3d 464, 482 (1st Cir. 2009).  Furthermore, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  *Winter*, 555 U.S. at 24. Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the [Petitioner] is entitled to such relief."  *Id.* at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

Mr. Chanaguano Caiza argues "there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm."  *Prelim. Inj. Mot.* at 6 (citing *Nken v. Holder*, 556 U.S. 418, 436 (2009)).  The Respondents counter that from their perspective, "Petitioner has been illegally present in the United States, working illegally in the United States, and failing to register a change of address with immigration authorities here.  His parole has been expired for several years."  *Opp'n to Prelim. Inj. Mot.* at 8.

---

[8]    The Supreme Court has instructed that the last two factors in the TRO analysis "merge when the Government is the opposing party" to the TRO; the Court follows this instruction and reviews the balance of the equities and the public interest in tandem.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The Court stresses that the issue in this case is narrow, based on a specific set of facts. It involves a noncitizen who entered the United States illegally, was immediately detained at entry effectively at the border, was paroled due to detention capacity constraints, was required pursuant to the terms of the parole to report within sixty days of his arrival at his final destination to the nearest ICE office or face removal, was conditionally allowed entry subject to the terms of parole, which itself ended on February 10, 2022, and over three years later on September 28, 2025, was apprehended in the United States, having failed to report to the ICE office as directed by the terms of his parole and thus by its express terms was subject to removal. The public and government have a strong interest in the proper functioning of United States immigration law and Mr. Chanaguano Caiza has not demonstrated that he can succeed in challenging what this Court considers the government's proper execution of immigration enforcement. Nor has Mr. Chanaguano Caiza satisfactorily explained why the Court should carve out an exception to the operation of immigration law for those noncitizens who remained in the United States in direct violation of the terms of their parole. Thus, Mr. Chanaguano Caiza has not shown the balance of equities and public interest factors weigh in his favor.

## V.    CONCLUSION

The Court DENIES Petitioner's Emergency Motion and Memorandum of Law Requesting Preliminary Injunction Enjoining Transfer (ECF No. 18) seeking to prohibit the Respondents from transferring Kevin Jason Chanaguano Caiza from his current place of detention—Delaney Hall Detention Center in Newark, New Jersey.

Having determined that Mr. Chanaguano Caiza is not likely to prevail on the underlying merits of his habeas claim, the Court DISMISSES without prejudice Mr. Chanaguano Caiza's Emergency Verified Amended Petition for Writ of Habeas Corpus and Request for Emergency Injunctive Relief Pursuant to Fed. R. Civ. P. 65(b) (ECF No. 7).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 28th day of October, 2025